[30 NYS3d 81]

Patrick Quintavalle, Appellant, v Nestor Perez, III, et al.,
Respondents.

First Department, April 26, 2016

APPEARANCES OF COUNSEL

*Harris J. Zakarin, P.C.*, Melville (*Harris J. Zakarin* of counsel) and *Robinson & Yablon, P.C.*, New York City, for appellant.

*Lewis Brisbois Bisgaard & Smith LLP*, New York City (*Nicholas P. Hurzeler* of counsel), for respondents.

## OPINION OF THE COURT

Saxe, J.

This appeal requires us to consider the application of case law holding that a pedestrian who crosses in the crosswalk with the right-of-way may still be held comparatively negligent, if he failed to notice an oncoming vehicle that could be seen by the use of ordinary attention. On the facts presented here, that case law is not determinative, and therefore, as a matter of law plaintiff is not comparatively negligent based on a failure to notice and avoid a vehicle that came up from behind him, striking him as the vehicle turned into the crosswalk. Indeed, the imposition of such an obligation on pedestrians in such circumstances would be unreasonable and unsafe.

On July 2, 2014, at about 9:30 p.m., plaintiff Patrick Quintavalle was heading east across Third Avenue in the north crosswalk of the intersection at 41st Street and Third Avenue in Manhattan. With the light in his favor, as he reached the middle of the crosswalk, an airport shuttle bus driven by defendant Nestor Perez, III, and owned by defendant Golden Touch Transportation of NY, Inc., which was traveling eastbound on 41st Street, turned left to go north on Third Avenue, running over plaintiff's left foot as he crossed. Plaintiff testified that he looked right and left before proceeding into the crosswalk, but did not see the bus until it made contact with him. Plaintiff suffered fractures, a partial amputation of the first and second digits, and a de-gloving injury to his left foot.

Plaintiff appeals from the motion court's denial of his motion for summary judgment (2015 NY Slip Op 32550[U] [2015]). The court rejected plaintiff's argument that because the bus approached from behind him and therefore was not within his field of vision until it was upon him, he did not have the opportunity to avoid it in time; instead, the court held that an issue of fact was presented as to whether plaintiff was compara-

tively negligent for failing to observe what was there to be seen, citing *Thoma v Ronai* (82 NY2d 736 [1993], *affg* 189 AD2d 635 [1st Dept 1993]).

Defendant's theory that plaintiff may be found comparatively negligent for his failure to notice the bus before it struck him, in effect imposes on the pedestrian an affirmative obligation to continually check for vehicles coming from every direction while in the process of crossing the street. In our view, defendant's theory of comparative negligence goes beyond that which the law requires—or should require—of a pedestrian crossing in a crosswalk with the right-of-way in such circumstances. While case law imposes a duty of care on a pedestrian, even when that pedestrian has the right-of-way in a crosswalk, it does not support the extent of the obligation defendant suggests.

The existence of a pedestrian's duty of due care, even when crossing with the light and the right-of-way, is longstanding (*see e.g. Counihan v Werbelovsky's Sons*, 5 AD2d 80 [1st Dept 1957]). In *Counihan*, this Court held that although the plaintiff pedestrian who was struck by a vehicle while crossing the street was entitled to a jury charge that "once having started to cross with a green light in her favor, she had the right to continue to the other side of the street[,] [and] [t]o this right of way defendant had the duty to defer," nevertheless, "[p]laintiff would . . . have been obliged to exercise due care, in the light of all the circumstances, in the exercise of her right of way" (*id.* at 83).

The Third Department in *Schmidt v Flickinger Co.* (88 AD2d 1068 [3d Dept 1982]) elaborated on the rationale for treating as a question of fact the issue of whether the pedestrian was guilty of any negligence contributing to the accident; essentially, the pedestrian's duty is based on her obligation to "see[ ] what was there to be seen" (*id.* at 1068).

However, not all cases in which a pedestrian with the right-of-way is struck by a vehicle present fact issues regarding the pedestrian's comparative negligence (*see e.g. Perez-Hernandez v M. Marte Auto Corp.*, 104 AD3d 489 [1st Dept 2013]). To discern the distinction, it is useful to begin discussion with *Thoma v Ronai* (82 NY2d 736 [1993], *affg* 189 AD2d 635 [1st Dept 1993]).

In *Thoma*, the plaintiff was crossing East 79th Street along the west side of First Avenue, with the walk signal in her favor, when she was hit while in the crosswalk by a van that had

been driving northbound on First Avenue, which made a left turn onto East 79th Street heading westbound. This Court, in affirming the denial of the plaintiff's motion for summary judgment, observed that "[if the plaintiff] had looked to her left while crossing, she almost certainly would have seen defendant's van turning left on East 79th Street from First Avenue and might have avoided the accident" (189 AD2d at 636). The Court of Appeals, in affirming, similarly held that "[the plaintiff's] affidavit and the police accident report[ ] demonstrate that she may have been negligent in failing to look to her left while crossing the intersection" (82 NY2d at 737).

But, there is an important circumstance in *Thoma* that should be taken into account when considering how to apply its holding in other cases; indeed, that circumstance is highlighted by this Court's discussion of the record in *Thoma*. In its analysis in *Thoma*, the majority of this Court placed substantial emphasis on the pedestrian's position and direction when the van hit her (189 AD2d at 636). It acknowledged that according to the defendant, the plaintiff had been walking northbound in the crosswalk as she crossed East 79th Street on the west side of First Avenue, when his van, driving northbound on First Avenue, approached the plaintiff from behind and hit her on her right side as he turned left onto East 79th Street. But, in order to hold that the plaintiff might be held comparatively negligent, the Court looked to the plaintiff's version of the events. In her affidavit, the plaintiff asserted that she was heading south, not north, as she crossed East 79th Street on the west side of First Avenue, and so was struck on her left, not her right side by defendant's northbound van when it turned left from First Avenue onto East 79th Street. This Court and the Court of Appeals both emphasized that the plaintiff's rendition of the circumstances was supported by the police report stating that her left side was injured, and they looked only to the plaintiff's version of events to reason that she might be found comparatively negligent.

The distinction between the defendant's version of the events and the plaintiff's version in *Thoma* is critical, because in the plaintiff's version, she was facing toward the defendant's oncoming van as it approached her in the crosswalk; in the defendant's version, the oncoming van would have come up from behind her. In order to allow for the possibility that the plaintiff might have been comparatively negligent in *Thoma*, the Court needed to use the plaintiff's narrative, which supported its

reasoning that the plaintiff could have seen the defendant's van in advance of the accident, merely by looking toward her left while crossing. Notably, the defendant's version of events did not allow for that same possibility, since noticing a vehicle coming up from behind would have required the plaintiff to not only maintain awareness of what was in her field of vision, but to turn in the opposition direction of where she was headed, a measure that common sense tells us may create more dangers than it avoids. Unlike glancing to the side within a person's field of vision while walking, *looking behind while walking forward is actually unsafe*. Given that obvious difficulty with imposing any possibility of liability on the plaintiff had the events occurred as the defendant described them, the Court in *Thoma* did not rely on the defendant's version in directing a trial on the issue of the plaintiff's possible comparative negligence; it looked only to the plaintiff's version.

Other cases of this Court and the Second Department help illustrate how, notwithstanding the *Thoma* case, there are circumstances where a pedestrian with the right-of-way may not be held comparatively negligent based on an alleged failure to pay ordinary attention and exercise ordinary caution. For instance, in *Perez-Hernandez v M. Marte Auto Corp.* (104 AD3d 489 [1st Dept 2013]), where this Court affirmed a grant of partial summary judgment to the plaintiff, the appellate record establishes that the plaintiff had the right-of-way and was walking westbound in the crosswalk on Sedgewick Avenue at 195th Street in the Bronx, when the defendant's vehicle, which had been heading westbound on 195th Street, turned left onto Sedgewick Avenue, hitting him on his right side and knocking him down. So, as in the present case, the vehicle came up from behind the plaintiff before it struck him in the crosswalk. This Court, in rejecting the possibility of comparative negligence on the part of the plaintiff, observed that "[p]laintiff testified that he looked both ways before crossing the street, and *he could not have avoided the accident* given his testimony that he noticed the car moments before being struck" (104 AD3d at 490 [emphasis added]). In other words, given the situation, the plaintiff could not have avoided the accident through the exercise of ordinary attention and the exercise of ordinary caution.

In *Hines v New York City Tr. Auth.* (112 AD3d 528 [1st Dept 2013]), the appellate record reflects that the plaintiff had the right-of-way while crossing Greenwich Street southbound along

the eastern side of Seventh Avenue, when she was hit by a vehicle making a left turn from Seventh Avenue (which runs one way, southbound) onto Greenwich Street. When the plaintiff was in the middle of the crosswalk, she saw in her peripheral vision a large vehicle moving fast and making a left turn into the crosswalk, a split second before it struck her. This Court explained that the plaintiff could not be held comparatively negligent based on her assertion that she "continued to look for traffic as she crossed the street, and that she could not have avoided the accident because she only noticed defendants' vehicle, which was moving quickly, a 'split second' prior to being struck" (112 AD3d at 529).

The facts here are comparable to those in *Perez-Hernandez* and *Hines*, and are like the defendant's version of events in *Thoma*. There is nothing to indicate that plaintiff failed to exercise ordinary caution or pay ordinary attention as he walked, such as would have given him advance warning of defendants' bus coming up behind him. The only level of attention that could have succeeded in his avoiding being hit by defendants' bus would have required his continually turning around and checking behind him as he walked. The imposition of such an obligation on a pedestrian would be unreasonable and unsafe, and is not required by the ruling in *Thoma*.

The Second Department's ruling in *Castiglione v Kruse* (130 AD3d 957 [2d Dept 2015]) provides support for this reasoning. The majority there, in holding that the plaintiff pedestrian was free from comparative negligence as a matter of law, offered as one of its reasons the view that the defendant's vehicle had approached the plaintiff from behind and to her right, so that it was out of her view until just before it made impact.

Based upon the foregoing discussion, we hold that as a matter of law, plaintiff, who was struck by a bus that approached from behind and to the right, and which turned left into the crosswalk where it struck plaintiff, may not be held comparatively negligent based on a theory that he could have seen and avoided the bus through the exercise of ordinary care.

Accordingly, the order of the Supreme Court, Bronx County (Kenneth L. Thompson, Jr., J.), entered August 4, 2015, which denied plaintiff's motion for partial summary judgment on the issue of liability, should be reversed, on the law, without costs, and the motion granted.

FRIEDMAN, J.P., SWEENY, SAXE, RICHTER and KAHN, JJ., concur.

Order, Supreme Court, Bronx County, entered August 4, 2015, reversed, on the law, without costs, and the motion granted.